# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2011

No. 11-60173

Lyle W. Cayce
Clerk

In Re:  JEFF GIBSON; DOCTOR ROBERT SMITH; BATESVILLE
EMERGENCY PHYSICIANS, P.A.; BATESVILLE EMERGENCY
PHYSICIANS, INCORPORATED; BATESVILLE HOSPITAL
MANAGEMENT, INCORPORATED; PHYSICIANS AND SURGEONS
HOSPITAL GROUP, doing business as Tri-Lakes Medical Center,

Petitioners

Petition for Writ of Mandamus to the United States District Court for the
Northern District of Mississippi, Delta Division
(2:08-CV-81 & 2:08-CV-82)

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

The Petitioners are defendants in consolidated cases that were filed in the Delta Division of the Northern District of Mississippi, which contains no operational federal courthouse.  Judge Pepper, whose duty station is in the Greenville Division, set the trial there.  The Petitioners seek a writ of mandamus directing Judge Pepper to transfer the trial from Greenville to Oxford, which is in the Western Division.   For the reasons set forth below, we deny the writ.

<u>Facts and Procedural History</u>

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60173

We briefly recite the underlying facts:  A vehicle driven by Lewis struck a mail delivery vehicle that was on the sidewalk in front of Darby's residence in Sardis (Panola County), Mississippi.  The mail delivery vehicle struck and injured Darby, and Lewis was killed in the collision.  Lewis's estate sued the Batesville (Panola County), Mississippi hospital and emergency room physicians and nurses ("the medical providers"), alleging that they failed to warn Lewis that he should not drive after taking the medications that they had administered to him.  Darby sued the Postal Service under the Federal Tort Claims Act, and also sued the medical providers for failing to warn Lewis not to drive.  The suits were filed in the Northern District of Mississippi.

Panola County, where all of the alleged events occurred, is located in the Delta Division of the Northern District of Mississippi.  *See* 28 U.S.C. § 104(a)(3).  Both of the consolidated cases were filed in the Delta Division.  The statute provides that "[c]ourt for the Delta Division shall be held at Clarksdale and Cleveland."  *Id.*  However, there is no operational federal courthouse in either of those towns, or for that matter anywhere in the Delta Division.

The cases were assigned to Judge Pepper in accordance with a standing order governing the division of cases among the judges of the Northern District of Mississippi.  Judge Pepper's duty station is the federal courthouse in Greenville, which is in the Greenville Division of the Northern District of Mississippi.  *See* 28 U.S.C. § 104(a)(4).  On December 30, 2009, pursuant to the custom and policy of the judges in the Northern District of Mississippi to try cases at their duty stations, Judge Pepper set the cases for trial in Greenville.

Approximately six months later, in July 2010, the Petitioners (the medical providers) filed a motion to transfer the trial from Greenville to Oxford, which is in the Western Division of the Northern District of Mississippi.  *See* 28 U.S.C. § 104(a)(2).  Judge Pepper has not yet ruled on that motion.  The Petitioners

2

nevertheless filed a petition for a writ of mandamus in this court. They ask this court to direct Judge Pepper to set the cases for trial in Oxford.

The Petitioners argue that Oxford, rather than Greenville, is the proper venue for the trial of a case filed in the Delta Division. They contend that Judge Pepper exceeded his authority and abused his discretion under 28 U.S.C. § 1404(a) by transferring the location of the trial from Oxford to Greenville, over the objection of the Petitioners, without also transferring venue. They maintain that Judge Pepper ignored the convenience of the parties and witnesses and the interests of justice, all of which weigh heavily in favor of trial in Oxford. According to the Petitioners, the majority of the parties, witnesses and sources of proof are located in Batesville and Sardis, which are less than 40 miles from Oxford, while Greenville is more than 100 miles from Batesville and Sardis. The Petitioners contend that a trial in Greenville will result in increased expense and inconvenience for all of the parties. They also complain that, because of the jury selection plan for the Northern District of Mississippi, which puts Panola County in the Western Division, no resident of Batesville or Sardis will ever have the opportunity to serve as a juror in this litigation if the cases are tried in the Greenville Division.

The Plaintiffs and Judge Pepper have filed responses opposing mandamus. The Plaintiffs argue that Judge Pepper's setting of the trial in Greenville is an appropriate exercise of discretion in this unusual situation where the statutorily designated courthouse for the division in which the case is filed has been closed. According to the Plaintiffs, the question is *not* the propriety of transfer of the trial location from Oxford to Greenville, because the case was never set for trial in Oxford. Instead, the question is whether the Petitioners have shown that the trial should be moved from Greenville to Oxford, and they have not. The Plaintiffs state that their choice of venue is the Delta Division, for which trial should be held in Clarksdale. Alternatively, the Plaintiffs prefer that the trial

No. 11-60173

be held in Greenville. They note that geographically, Greenville, as Clarksdale, is in the Delta region of the state, while Oxford is not. They also have presented evidence that the demographics of the Greenville Division are more similar to the demographics of the Delta Division than those of the Western Division.

Judge Pepper states in his response (which was approved by all of the judges in the Northern District of Mississippi) that the policy of the Northern District judges to try cases at their duty stations conforms with the civil venue provision of 28 U.S.C. § 1391(b) — that venue is proper in any district in which a defendant resides, in which a substantial part of the events or omissions giving rise to the claim occurred, or in which any defendant may be found. Judge Pepper takes the position that section 1404(a) has no application here, because the case was initially set for trial in Greenville, not transferred there, and that *Volkswagen* does not apply to a district court's exercise of discretion in an intra-district context. He says that he did not act in reliance on § 1404 but that, even if it applies, Petitioners bear the burden of showing that the convenience of the parties and witnesses and the interest of justice strongly favor transfer.

<u>Northern District of Mississippi Policy & Standing Order</u>

Since 1999, a series of standing orders have governed the allocation of civil cases filed in the Northern District of Mississippi. The current standing order allocates half of the cases filed in a particular division to the resident active district judge, and the remaining cases are divided among the other judges in the Northern District. It is the policy of all of the judges in the Northern District to try cases at their duty stations.

Chief Judge Mills explained the reasons for the policy in *Johnson v. Lewis*, 645 F. Supp. 2d 578 (N.D. Miss. 2009). Those reasons are summarized as follows:

(1) Prevention of judge-shopping. Prior to its repeal in 1988, the divisional venue statute, 28 U.S.C. § 1393, had limited plaintiffs in multi-divisional

districts to filing suit in the division where the defendant resided. After that statute was repealed, plaintiffs were free to file suit in any division in a district. Chief Judge Mills stated that the judges of the Northern District sought to avoid the perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed, and to avoid a perception that any particular division was a "fiefdom" of sorts, in which the idiosyncrasies and preferences of one judge come to dominate the local litigation practice. 645 F. Supp. 2d at 582.

(2) Avoidance of delays that would inconvenience litigants and slow the administration of justice because of court congestion and the lack of available courtrooms for judges conducting proceedings away from their duty stations.

(3)    Avoidance of the administrative inconvenience and inability of the judges to manage their dockets efficiently if they were  required to maintain a near-constant state of preparation to travel to various trials on their calendars.

(4)  Development of a jurisprudence applicable to the district as a whole

(5) Lack of operational courthouses in the Delta Division. Chief Judge Mills noted that the places specified in the statute for court to be held in cases filed in the Delta Division, Cleveland and Clarksdale, had no operational courthouses. Thus, of necessity, cases filed in the Delta Division could not be tried in the locations specified by the statute.

Judge Pepper cited another reason in his response to the petition for writ of mandamus:  the cost to taxpayers for judges and their staffs to travel away from their duty stations to conduct trials.

Chief Judge Mills acknowledged that this approach regrettably results in some litigants and some witnesses having to travel longer distances than they would have to travel if a particular district judge only heard cases in his or her own division. However, he explained that it was the view of all of the Northern

No. 11-60173

District judges that the quality and uniformity of justice is more important than the driving distance some litigants might face in reaching those courtrooms.

Chief Judge Mills pointed out that the district's adoption of divisional venue practices would not leave civil litigants unprotected, because a strong showing of prejudice would make an intra-district transfer necessary and appropriate. That is the same standard that this court has applied in criminal cases. *See United States v. Duncan*, 919 F.2d 981, 985 (5th Cir. 1990). Chief Judge Mills stated that he could "discern no unfairness to civil litigants by applying the *Duncan* standard to the civil docket, since a criminal defendant facing trial for his personal freedom faces much higher stakes than any civil litigant." 645 F. Supp. 2d at 583. Furthermore, Judge Mills stated that a strong showing of prejudice was not the sole basis for a divisional transfer: "On a case-by-case basis each court should determine if facts specific to a particular matter counsel for a transfer. In so deciding the judges in the district would likely consider the factors specified in *In re Volkswagen* as well as other factors such as the timeliness of the request for relief." 645 F. Supp. 2d at 584 n.7. Unfortunately, the Petitioners in this case did not give Judge Pepper a chance to consider whether they had made such a showing. Instead, they sought mandamus relief before he had ruled on their motion to transfer.

## Standard for Mandamus

A writ of mandamus "is an appropriate remedy for exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) (internal quotation marks and citation omitted). Three requirements must be satisfied before a writ of mandamus may be issued: (1) the petitioner must have no other adequate means to obtain the relief requested; (2) the petitioner must show a clear and indisputable right to the relief requested; and

No. 11-60173

(3) the court, in its discretion, must be satisfied that issuance of the writ is appropriate under the circumstances. *Id*. at 311.

The Petitioners cannot show that they have no other adequate means to obtain the requested relief, because they sought mandamus relief without waiting for Judge Pepper to rule on their motion to transfer. As long as that motion remains pending, there is a possibility that Judge Pepper will grant the motion and transfer the trial setting from Greenville to Oxford. Mandamus could be denied for this reason alone.

The Petitioners argue that the district court lacks the authority to transfer the location of the trial to another division, over the objection of Petitioners, without transferring the venue of the entire action in accordance with the standards applicable to transfers of venue under 28 U.S.C. § 1404.

Section 1404 authorizes a court to transfer a case or a proceeding within a case. It provides, in relevant part:

> (a)  For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

> (b)  Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceeding in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

> (c)  A district court may order any civil action to be tried at any place within the division in which it is pending.

28 U.S.C. § 1404.

Subsection (a) authorizes the court to transfer venue of the entire action for the convenience of the parties and witnesses, in the interest of justice. Subsections (b) and (c) authorize the district court to transfer the location of

7

proceedings, including trial, without also transferring venue of the entire action. Subsection (b), by its terms, applies only when all of the parties consent.

The Petitioners contend that the district court's local practice is inconsistent with § 1404. They contend further that, even if the Northern District has properly adopted a practice of allowing district judges to try cases at their duty stations, such a practice is invalid, because it is inconsistent with 28 U.S.C. §§ 104 and 1404. The Petitioners argue that the district court relied on facts not relevant under *Volkswagen*, including the convenience of the court.

The Petitioners have not demonstrated a usurpation of judicial power or a clear abuse of discretion by the district court. Consequently, they cannot establish that they have a clear and indisputable right to issuance of the writ. The district court did not *transfer* the trial of these cases from Oxford to Greenville; they were never set for trial in Oxford. Accordingly, the district court did not act in a manner inconsistent with 28 U.S.C. § 1404(b), which authorizes intra-district transfers of proceedings only when all of the parties consent or agree. Although the trial setting in Greenville violates the statutory directive that court for Delta Division cases is to be held at Clarksdale or Cleveland, there is no operational federal courthouse at either of those locations. A writ of mandamus will issue to correct only a clear abuse of discretion, *Volkswagen*, 545 F.3d at 309-10, and under these facts there is no clear abuse of discretion.

The Petitioners' reliance on this court's grant of mandamus in *In re: Koppers Inc.*, No. 09-60127 (5th Cir. April 3, 2009), is misplaced. The order granting mandamus in *Koppers* states only that "It is ordered that the petition for writ of mandamus is granted." It is difficult to see how that order creates any binding precedent that must be followed under the facts of this case. Moreover, *Koppers* is distinguishable; the plaintiffs in that case filed suit in the Western Division (Oxford), and thus had a statutory right to have the case tried in Oxford rather than Greenville. *See* 28 U.S.C. § 104(a)(2) (stating that "[c]ourt

No. 11-60173

for the western division shall be held at Oxford"). Here, the plaintiffs filed suit in the Delta Division, and they have no statutory right to have this case tried in Oxford.

<u>Conclusion</u>

Even assuming that the Petitioners have satisfied the first two requirements for issuance of a writ of mandamus, the issuance of the writ is not appropriate under these circumstances. Accordingly, for the reasons we have stated herein, the district court did not clearly abuse its discretion or reach a patently erroneous result, and the petition for a writ of mandamus is

DENIED.